# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,
    Plaintiff,

v.

DAVION FITZGERALD,
    Defendant.

Case No.: 2:17-cr-00295-JCM-NJK

**ORDER**

(Docket No. 52)

    Pending before the Court is Defendant Davion Fitzgerald's motion to quash writ of habeas corpus ad prosequendum ("writ"). Docket No. 52. The Court has considered Defendant's motion, the United States' response, and Defendant's reply. Docket Nos. 52, 53, 54.

    On December 4, 2019, United States District Judge James C. Mahan set a resentencing hearing for Defendant on January 9, 2020, at 10:30 a.m. Docket No. 45. As a result, on December 18, 2019, the United States submitted a petition for a writ for Defendant. Docket No. 47. On the same date, the Court granted the United States' petition and the writ issued. Docket Nos. 48, 49.

    On December 18, 2019, Defendant submitted a motion to continue his sentencing hearing. Docket No. 50. Defendant asked the Court to continue his resentencing hearing for at least 90 days to allow him to file a writ of certiorari to the United States Supreme Court. *Id*. at 2. On December 20, 2019, Judge Mahan granted Defendant's request and continued his resentencing to April 9, 2020. Docket No. 51 at 4.

    Defendant now asks the Court to quash his writ. Docket No. 52. In support of his request, Defendant submits that, as of April 1, 2020, he is eligible for release to the halfway house, but will "likely not be released due to the pending writ." *Id*. at 3. Release to the halfway house, according

to Defendant, would allow him "to start exploring employment opportunities and start the process of successful reintegration back into society." *Id*. Defendant submits that, if the Court quashes his writ and he is released to the halfway house, he will appear for his resentencing on April 9, 2020, as an out-of-custody defendant. *Id*. If, however, Defendant is not released despite the quashing of the writ, the United States Marshals will transport him to court. *Id*.

In response, the United States submits that the writ provides the legal mechanism to ensure that Defendant remains in Marshal custody and appears for his resentencing hearing. Docket No. 53 at 1. The United States further submits that no legal basis exists for Defendant to be released to a halfway house, as the Ninth Circuit vacated his original sentence. *Id*. at 4-5. The original sentence, submits the United States, "provided the only legal authority for the Bureau of Prisons to assign [Defendant] to a halfway house" and, now the sentence has been vacated, Defendant's eligibility for halfway house placement no longer exists. *Id*. at 5. Additionally, the United States submits that releasing Defendant to a halfway house days before his resentencing, during which he may receive an additional term of incarceration, "is inappropriate and impractical." *Id*. at 6. The United States further submits that Defendant was detained pending trial and was remanded to custody after both his change of plea hearing and prior sentencing. *Id*. Permitting Defendant's release prior to resentencing, the United States submits, circumvents "the standard for pre-sentencing release under 18 U.S.C. § 3143 and its accompanying presumption in favor of detention." *Id*. Finally, the United States submits that Defendant was transferred to Pahrump because of the writ and the writ ensures his appearance in court at his resentencing. *Id*. at 6-7. The United States therefore asks the Court to deny Defendant's motion. *Id*. at 7.

In reply, Defendant submits that his counsel "believes" the Bureau of Prisons will "continue to [compute] and designate [him] under the original judgment until a new judgment has

been issued." Docket No. 54 at 2. Further, Defendant submits that the Court has the discretion to order him released and should do so because the risk to his health created by the COVID-19 pandemic constitutes a compelling reason. *Id*. at 2-3. Defendant submits that he has a heightened risk of contracting COVID-19 because of the conditions at the Southern Nevada Detention Center, where he is being held pending resentencing. *Id*. at 3, 8-9. Finally, Defendant submits that he does not pose a risk of nonappearance or significant risk of danger to the community because he can reside at the halfway house upon release and then he has a residence in the community to which he can be released. *Id*. at 9-10. As a result, Defendant asks the Court to quash the writ. *Id*. at 10.

When Defendant first appeared before the Court, he was given a detention hearing. Docket No. 12. After the detention hearing, United States Magistrate Judge Carl W. Hoffman ordered Defendant detained pending trial and remanded him to custody. *Id*. Judge Hoffman found that no condition or combinations of conditions of release exist that will reasonably assure the safety of the community and Defendant's appearance as required because of Defendant's prior criminal history, history of alcohol or substance abuse, lack of stable employment, prior failure to appear in court as ordered, and unknown or unverified background information. Docket No. 14. Judge Mahan remanded Defendant to custody after his change of plea and his original sentencing. Docket Nos. 20, 32. No judge has reversed the detention order. *See* Docket.

Defendant now awaits resentencing. Pursuant to 18 U.S.C. § 3143(a), "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, … be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." Judge Mahan did not make a finding that

Defendant is not likely to flee or pose a danger to any person or the community. Therefore, under the relevant statute, Defendant shall remain detained.

The Court finds Defendant's speculation regarding his release to the halfway house unavailing. The Court does not make decisions based upon an attorney's belief that a person will be released. Further, Defendant argued for the first time in reply that he faces an increased risk of contracting COVID-19 if he remains in custody.[1] The Court does not generally address arguments made for the first time in reply. Defendant's argument, however, applies equally to anyone in custody or, for that matter, at the halfway house[2] or anywhere else in this community or any other. Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee. Therefore, the Court finds Defendant's COVID-19 argument unpersuasive.

Accordingly, Defendant's motion, Docket No. 52, is **DENIED**.

IT IS SO ORDERED.

DATED: March 24, 2020.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

---

[1] There are currently no cases of COVID-19 in the Southern Nevada Detention Center and no detainees exhibiting any symptoms of COVID-19. Further, many precautions have been taken to ensure the safety of the detainees.

[2] In fact, Defendant is more protected from contracting COVID-19 in the Southern Nevada Detention Center than he is in the halfway house. In the halfway house, the residents live in close confinement with each other. In addition, the residents are allowed to leave the facility, go into the community, and return to the halfway house, which clearly increases the likelihood of transmission.